ROKALOR, INC. *v.* CONNECTICUT EATING ENTERPRISES, INC., ET AL.
(6652)

DUPONT, C. J., O'CONNELL and FOTI, Js.

Argued December 14, 1988—decision released May 16, 1989

*Timothy S. Hollister,* for the appellant-appellee (plaintiff).

*M. Katherine Webster-O'Keefe,* with whom, on the brief, was *Vincent P. McCarthy,* for the appellee-appellant (defendant Anthony Cerruto).

FOTI, J. The plaintiff appeals and the defendant[1] Anthony Cerruto cross appeals from the judgment rendered by the trial court awarding the plaintiff damages for the defendants' breach of a commercial lease.

The plaintiff claims that the trial court erred (1) in denying a substantial portion of its claim for posteviction losses of rental income, and (2) in denying its claim for expenses. In the defendant's cross appeal, he claims that the trial court erred in awarding the plaintiff posteviction damages. We find error on the plaintiff's second claim and no error on the cross appeal.

---

[1] The named defendant, Connecticut Eating Enterprises, Inc., (Eating Enterprises) was defaulted for failure to appear. On May 1, 1987, the trial court rendered judgment in favor of the plaintiff on its claim against Eating Enterprises and awarded the plaintiff damages in the amount of $71,159.21. The defendant Eating Enterprises has not appealed. References to "the defendant" apply to the defendant Anthony Cerruto.

The trial court found the following facts. On May 16, 1985, the parties entered into a lease agreement under which the defendant agreed to lease the plaintiff's commercial property for a three year term beginning on June 24, 1985. According to the lease, the defendant agreed to pay the plaintiff a monthly rent of $3400 for the first year, $3700 per month for the second year and $3850 per month for the third year. The lease further obligated the defendant to pay the real estate taxes, water and sewer charges, fire district taxes, and any maintenance charges. Under the lease, the defendant was to pay these expenses "within fifteen (15) days after presentation to the lessee of the bill for same."[2] With respect to assignment, the lease provided: "No assignment of this lease by Lessee shall release the lessee of his obligations under this lease."

On June 4, 1985, the defendant assigned his interest in the lease to Connecticut Eating Enterprises, Inc. (Eating Enterprises). Beginning August 1, 1986, the defendant's assignee stopped paying rent. In September, 1986, Eating Enterprises vacated the premises and neither the defendant nor his assignee paid any further amounts under the terms of the lease. In November, 1986, the plaintiff obtained a judgment of possession of the premises after a summary process proceeding.

---

[2] Paragraph 8 of the lease provides: "That the Lessee shall pay as additional rent all real estate taxes, assessments, water and sewer charges, and fire district taxes which are assessed or imposed upon the leased premises or any part thereof, which may become payable during this term of this lease. Said additional rent shall be paid to the Lessor by the Lessee within fifteen (15) days after presentation to the Lessee of the bill for same. Lessee shall have the right to contest by legal proceedings, instituted and conducted by the Lessee at Lessee's own expense and free of expense to the Lessor, any such expenses constituting additional rent. In addition, Lessee agrees to pay any additional interest, costs, or fees incurred by Lessee's failure to make timely payments hereunder."

On March 12, 1987, the plaintiff executed a two year lease with a new tenant, effective May 1, 1987. The lease obligated the tenant to pay rent in the amount of $2800 per month for the first year, and $3400 per month for the second year.

The parties stipulated that the defendant was liable for breaching the lease and agreed to a hearing on damages only. At the hearing, the parties further stipulated that prior to the summary process judgment the defendant was liable for damages in the amount of $12,787.49. At the hearing, the parties focused on damages occurring after the summary process judgment was rendered, including posteviction rent, a real estate broker's commission, tax claims, and attorney's fees.

The trial court awarded the plaintiff $11,100 in posteviction damages representing three of the six months of lost rental income, but denied the plaintiff's claim for additional damages for lost and diminished rent finding that the plaintiff had failed to make reasonable efforts to mitigate its damages. In addition, the trial court denied the plaintiff's claim for expenses finding that the plaintiff had failed to present the bills for such expenses to the defendant as required by the terms of the lease.

The plaintiff's first claim is that the trial court erred in denying it rent for three of the six months between the date the defendant was evicted and the beginning of the successor tenant's lease term, and for the difference between the rental amounts in the old and the new leases. In his cross appeal, the defendant claims that the plaintiff was not entitled to any posteviction damages. In light of the nature of the defendant's claim, we must first address the defendant's cross appeal before turning to the plaintiff's claims.

The defendant argues, in essence, that the plaintiff, by exercising its right under General Statutes § 47a-23[3] to sue for possession of the premises, waived its right to recover damages that it incurred after the entry of a judgment of possession. We disagree.

When the lessee breaches a lease for commercial property, the lessor has two options: (1) to terminate the tenancy; or (2) to refuse to accept the surrender. *Sagamore Corporation* v. *Willcutt,* 120 Conn. 315, 317–18, 180 A. 464 (1935); *Dewart Building Partnership* v. *Union Trust Co.,* 4 Conn. App. 683, 687, 496 A.2d 241 (1985). Where the landlord elects to continue the tenancy, he may sue to recover the rent due under the terms of the lease. Under this course of action, the landlord is under no duty to mitigate damages. *Dewart Building Partnership* v. *Union Trust Co.,* supra. When the landlord elects to terminate the tenancy, however, the action is one for breach of contract; *Sagamore Corporation* v. *Willcutt,* supra; and, when the tenancy is terminated, the landlord is obliged to mitigate his damages. *Dewart Building Partnership* v. *Union Trust Co.,* supra. When the tenancy ends, the tenant is released

---

[3] General Statutes § 47a-23 (a) provides: "When a rental agreement or lease of any land or building or of any apartment in any building, or of any dwelling unit, or of any trailer, or any land upon which a trailer is used or stands, whether in writing or by parol, terminates by lapse of time or by reason of any expressed stipulation therein, or under the provisions of section 47a-15, or as a result of a violation of section 47a-11, or where such premises, or any part thereof, is occupied by one who has no right or privilege to occupy such premises, or where one originally had the right or privilege to occupy such premises but such right or privilege has terminated, and the owner or lessor, or his legal representatives, or his attorney-at-law, or in-fact, desires to obtain possession or occupancy of the same, at the termination of the rental agreement or lease, if any, or at any subsequent time, he or they shall give notice to each lessee or occupant to quit possession of such land, building, apartment or dwelling unit, at least eight days before the termination of the rental agreement or lease, if any, or before the time specified in the notice for the lessee or occupant to quit possession or occupancy."

from his obligations under the lease and is, therefore, no longer obliged to pay rent. *Feneck* v. *Nowakowski,* 146 Conn. 434, 436, 151 A.2d 891 (1959).

The defendant relies on *Feneck* v. *Nowakowski,* supra, for the proposition that because the plaintiff opted to terminate the tenancy, his obligation to pay rent was discharged and, therefore, he cannot be liable to pay rent due after the judgment of possession was rendered. The defendant's reliance on *Feneck* is misplaced. Although the termination of the tenancy releases a tenant from his obligations under the lease, such release does not leave the landlord without legal recourse to recover damages. Where a landlord, as in this case, elects to terminate the tenancy and to regain possession of the premises, although he cannot institute an action for rent due under the lease, he may sue for a breach of the lease. Where the action is one for breach of the lease, basic contract principles apply.

As the trial court correctly concluded: "A lease is nothing more than a contract. *Robinson* v. *Weitz,* 171 Conn. 545, 551, [370 A.2d 1066 (1976)]. Thus, as in any other contract action the measure of damages is that the award should place the injured party in the same position as he would have been in had the contract been fully performed. *Lar-Rob Bus Corporation* v. *Fairfield,* 170 Conn. 397, 404–405, [365 A.2d 1086 (1976)]. As a consequence, the unpaid rent, while not recoverable as such, may be used by the court in computing the losses suffered by the plaintiff by reason of the defendant's breach of contract of lease. The plaintiff would be entitled to recover the damages which would naturally follow from such a breach. *Sagamore Corporation* v. *Willcutt,* [supra, 320]." See also *Danpar Associates* v. *Somersville Mills Sales Room, Inc.,* 182 Conn. 444, 445–46, 438 A.2d 708 (1980); 49 Am. Jur. 2d, Landlord and Tenant § 183. We conclude that the trial court correctly determined that, in an action for breach of a

lease, the amount of rent agreed to by the parties is a proper measure of damages. There is, therefore, no error on the defendant's cross appeal.

Having determined that the plaintiff's suit for posteviction damages under a breach of contract theory is actionable, we turn to the plaintiff's first claim on appeal that the trial court erred in finding that it failed fully to mitigate its damages. We find no error.

It is well established that in an action for damages for breach of a lease, the injured party is under a duty to mitigate his or her damages. *Danpar Associates* v. *Somersville Mills Sales Rooms, Inc.*, supra, 446. The duty to mitigate requires a landlord to ''make reasonable efforts'' to minimize damages; id.; which includes taking steps to relet the premises. What constitutes reasonable efforts is a question of fact for the trier. Id. We will not reverse the findings of the trial court unless we conclude they are clearly erroneous. Practice Book § 4185; *Gallicchio Bros., Inc.* v. *C & S Oil Co.*, 191 Conn. 104, 107, 463 A.2d 600 (1983); *Elliott* v. *Estate of Nellie Galaske*, 17 Conn. App. 823, 824, 552 A.2d 1225 (1989). The trial court's findings of fact are clearly set forth in an exhaustive and well reasoned memorandum of decision.

In determining that the plaintiff failed to mitigate some of its claimed damages, the trial court found the following acts or omissions determinative. First, the trial court found that the plaintiff did not hire a real estate broker until almost four months after the defendant's default and provided no explanation for this delay. The trial court found that this unexplained delay was unreasonable. In addition, the plaintiff did not introduce any evidence by the broker to establish what efforts were made by him to lease the premises. Further, the trial court found that the unexplained decrease in the rental value of the property was unreasonable

in view of the fact that there was evidence presented that established that the value of the property had increased. We conclude, on the basis of these factors, that the trial court's finding that the plaintiff failed to make reasonable efforts to mitigate its damages was well within its discretion.

The plaintiff's second claim is that the trial court erred in denying his claim for "additional rent" or expenses on the ground that the plaintiff had failed to present the bills to the defendant as required by the lease.[4] The plaintiff argues that any obligation it may have had to present bills to the defendant was vitiated by the defendant's breach of the lease, and its subsequent notice to the defendant to quit the premises. We agree with the plaintiff and find error on this claim.

As stated above, a lease is a contract; *Sandrew* v. *Pequot Drug, Inc.*, 4 Conn. App. 627, 629, 495 A.2d 1127 (1985); and the "rules applying to contracts generally with respect to breach, the right to damages for breach, and the measure of damages, apply to leases as well as contracts." 49 Am. Jur. 2d, Landlord and Tenant § 176. It is a general rule of contract law that a total breach of the contract by one party relieves the injured party of any further duty to perform further obligations under the contract. *Batter Building Mate-*

[4] The plaintiff also claims that the trial court denied its claim for damages for heat and exterminator expenses on the same ground. The plaintiff argues that the "presentation" requirement in paragraph eight of the lease; see footnote 2, supra; applies to bills for real estate taxes, and sewer and fire district charges only and does not include general maintenance expenses such as heat.

There is nothing in the trial court's memorandum to suggest that it included heat as an element of "additional rent" under paragraph eight of the lease. The court obviously considered other claims for damages because it awarded the plaintiff miscellaneous damages. Furthermore, because the plaintiff did not seek articulation, it cannot now be heard to complain that this award for miscellaneous claims does not apply to general maintenance expenses such as heat. Practice Book §§ 4051 and 4061.

*rials Co.* v. *Kirschner,* 142 Conn. 1, 10, 110 A.2d 464 (1954); 4 A. Corbin, Contracts § 946; 17 Am. Jur. 2d, Contracts § 428; J. Calamari & J. Perillo, Contracts (3d Ed.) § 11-18; 2 Restatement (Second), Contracts §§ 237 and 243; see also *Vesce* v. *Lee,* 185 Conn. 328, 334, 441 A.2d 556 (1981). When a breach of contract occurs, "[t]he contract is not put out of existence, though all further performance of the obligations undertaken by each party may cease. It survives for the purpose of measuring the claims arising out of the breach . . . ." *Batter Building Materials Co.* v. *Kirschner,* supra.

The defendant in this case materially breached the lease by terminating rental payments and abandoning the property. The plaintiff, as the injured party, therefore, was not responsible for performing its remaining duties under the lease, including presenting bills for taxes and other expenses to the defendant. Since the defendant refused to pay rent, it was not likely that he would agree to pay the taxes and other expenses. The taxes and other expenses were designated as additional rent in the lease. The law does not require a party to engage in an act that would be futile. *Vachon* v. *Tomascak,* 155 Conn. 52, 57, 230 A.2d 5 (1967); *Connecticut Light & Power Co.* v. *Costello,* 161 Conn. 430, 441, 288 A.2d 415 (1971). We conclude that the trial court erred in finding that after the defendant committed a material breach, the plaintiff was required to conform to the terms of the lease.

There is error on the plaintiff's appeal, the judgment is set aside as to the award of damages and the case is remanded for a hearing to determine what additional damages may be due the plaintiff relating to the plaintiffs' claim for expenses. There is no error on the cross appeal.

In this opinion the other judges concurred.